United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM RICHARD MILLER, JR.,

Plaintiff,

v.

FIOPTIX, INC., ET AL.,

Defendants.

Case No.: 4:25-cv-10768-YGR

**ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. Nos. 11, 13

Plaintiff William Richard Miller, Jr. has sued defendants FiOptix, Inc.; Edgar S. Monge, Sr.; and D21-Techs, LLC alleging breach of contract, tortious interference, and other related claims arising from reassignment of work order for cable installation. Now pending are two motions to dismiss plaintiff's first amended complaint for failure to state a claim—one filed by FiOptix and the other filed by Monge. Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the motions. Leave to amend is granted only for certain claims specified below, and all other claims referenced are dismissed with prejudice.[1]

# I. BACKGROUND

## A. FACTUAL BACKGROUND

The first amended complaint alleges as follows:

FiOptix is a Delaware corporation that contracts with AT&T for street-to-residence installations of cable infrastructure. (Dkt. No. 9 ("FAC") ¶¶ 2, 8.) Plaintiff is a California licensed

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument.

contractor who did business under Wire it Right, LLC and Digitek, LLC and has performed these installations for FiOptix pursuant to work orders issued through FiOptix's "Vision" system. (*Id.* ¶¶ 1, 8–9.) Between 2020 and 2025, FiOptix assigned plaintiff approximately 17,000 work orders in the Bay Area. (*Id.* ¶ 9.) "In no instance did Plaintiff not fulfill an approved Work Order assigned to him," and "[n]o previous Work Orders had ever been reassigned once they had been assigned to Plaintiff." (*Id.* ¶¶ 9, 27.) When a work order was assigned through Vision, plaintiff had "48 hours to visit the jobsite, submit a detailed survey and determine whether or not the existing underground pipe [could] be used or needs replacement," a process which is "time-consuming" and "includes a cost estimate." (*Id.* ¶ 10.) Most estimates under $1,500—which have comprised approximately eighty percent of plaintiff's estimates—are "auto-approved" by FiOptix, whereas estimates over $1,5000 require AT&T approval. (*Id.* ¶¶ 11–12.) Approximately ten percent of plaintiff's estimates have been over $1,500 and approved by AT&T, and approximately ten percent of estimates "were not approved because of permitting, access, weather, HOA or other reasons." (*Id.* ¶ 12.)

Between 2020 and June 2025, "much of the work needed to fulfill the Work Orders was performed by Defendant Monge under independent contractor agreements between Monge's company, D21-Techs, LLC and Wire it Right, LLC or Digitek." (*Id.* ¶ 17.) All work performed by Monge "was done under Plaintiff's license and with Plaintiff remaining as the responsible contractor." (*Id.*) "On or about June 20, 2025, FiOptix reassigned without notice or cause approximately 165 open (i.e., work which had been scheduled but not yet completed) Work Orders that had been issued to Plaintiff." (*Id.* ¶ 18.) Monge and FiOptix worked in concert to cause the reassignment, and plaintiff is "informed and believes that most or all of the reassigned Work Orders were reassigned to Monge." (*Id.*)

### B. Procedural Background

Plaintiff originally filed this action in the Superior Court of California, County of Alameda on October 17, 2024. (Dkt. No. 1 ("Not. of Removal") ¶ 1.) FiOptix removed the action to this Court on December 17, 2025 (Not. of Removal) and subsequently filed a motion to dismiss on December 22, 2025. (Dkt. No. 3.) Rather than oppose the motion, plaintiff filed the FAC on January 12, 2026. The Court denied the motion then pending as moot and ordered any response to

the FAC to be filed within fourteen days after service, as required by Federal Rule of Civil Procedure 15(a)(3). (Dkt. No. 10.) FiOptix timely filed its instant motion on January 26, 2026 (Dkt. No. 11) and Monge filed his instant motion on February 11, 2026 (Dkt. No. 13). On July 16, 2026, the Court granted plaintiff counsel's motion to withdraw as counsel. (Dkt. No. 25.) Accordingly, plaintiff is now proceeding *pro se*.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may challenge the sufficiency of allegations in the complaint to state a claim for relief. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In evaluating a motion to dismiss for failure to state a claim, a court accepts factual allegations as true and construes them in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Interpipe Contracting, Inc.*, 898 F.3d at 886.

If granting a motion to dismiss, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

## III. ANALYSIS

### A. FiOptix's Motion

The FAC alleges the following claims against FiOptix: (1) breach of contract, (2) breach of implied-in-fact contract, (3) promissory estoppel, (4) breach of implied covenant of good faith and fair dealing, (5) inducing breach of contract, (6) intentional interference with contractual relations,

United States District Court
Northern District of California

(7) intentional interference with prospective economic relations, and (8) negligent interference with prospective economic relations. FiOptix argues that all eight claims should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim. In opposition, plaintiff concedes that a "party to a contract cannot be liable for inducing breach of contract or interfering with it" and therefore "agrees to dismiss" the fifth, sixth, seventh, and eight claims against FiOptix. (Dkt. No. 12 ("Oppo. to FiOptix MTD") at 7.) Accordingly, the motion is **GRANTED WITH PREJUDICE** as to those claims.

The Court considers the remaining claims below.

**1. Breach of Contract**

Plaintiff alleges that "each Work Order, when generated, constitutes a separate contract" and that FiOptix breached approximately 165 "open" work orders by "reassigning them to a third party or parties." (FAC ¶¶ 13, 23.)

"The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011).

FiOptix moves to dismiss plaintiff's breach of contract claim on the grounds that plaintiff fails to allege (1) the existence of a contract or contracts; (2) any breach; and (3) whether the contract or contracts were oral, written, or implied, as required under California law. *See* Cal. Civ. Proc. Code § 430.10(g). Plaintiff's opposition is conclusory and generally fails to engage with these arguments. Instead, plaintiff quotes the FAC, recites the essential elements of a contract under California law, and equivocates as to whether he is asserting an express or implied contract claim.

Upon review, the Court finds that plaintiff has failed to adequately allege the existence of enforceable express contracts created by the approximately 165 work orders at issue because he has not alleged that any of those work orders were ever approved by FiOptix or AT&T. Rather, plaintiff alleges that the work orders were "open," meaning they "had been scheduled but not yet completed." (FAC ¶ 18.) Thus, by plaintiff's own explanation, the work orders at issue triggered only preliminary diligence to determine cost estimates and not any binding agreement for plaintiff

to perform the underlying work, nor for FiOptix to pay for it. (*See id.* ¶¶ 14–15 (alleging that performance of the work and payment followed only after work orders were approved).) Further, plaintiff's contention that the work orders formed a contract "when generated" is undermined by his allegation that approximately ten percent of his prior assigned work orders were not approved. (*See id.* ¶¶ 12–13.)

Taken together, these allegations fail to plead contract formation because they fail to allege that FiOptix ever manifested assent to be bound by any specific contract terms, let alone what those terms were. *See Campbell v. Honey Sci., LLC*, 797 F. Supp. 3d 1080, 1089–90 (N.D. Cal. 2025) ("A legally enforceable offer must be sufficiently clear and definite in its terms, demonstrate the offeror's intent to be bound upon acceptance, and be capable of acceptance without the need for further negotiation."); *Dorian v. Cmty. Loan Servicing, LLC*, 2022 WL 7620460, at *6 (N.D. Cal. Oct. 13, 2022) ("A plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a copy of the contract to the complaint."). Moreover, even if plaintiff had adequately alleged formation, plaintiff has also failed to allege any breach because he has not alleged a specific contract provision that obligated FiOptix not to reassign the disputed work orders. *See Bodenburg v. Apple Inc.,* 146 F.4th 761, 767 (9th Cir. 2025) ("To allege breach, 'a plaintiff must identify a specific contract provision breached by the defendant.'") (quoting another case).

Accordingly, the motion is **GRANTED** as to plaintiff's breach of contract claim. Because plaintiff has already amended this claim once—after FiOptix filed its initial motion to dismiss which raised substantially the same arguments—the Court finds that amendment would be futile here. Accordingly, the breach of contract claim against FiOptix is dismissed without leave to amend.

### 2. Breach of Implied-in-Fact Contract

Plaintiff's breach of implied-in-fact contract claim appears to assert an alternative theory for contract formation "[b]ased on the long-standing relationship of the parties and the custom and practice that had developed between them." (FAC ¶ 27.) Accordingly, plaintiff alleges that he "reasonably understood that when Work Orders were assigned to Plaintiff, they would be fulfilled

United States District Court
Northern District of California

by Plaintiff." (*Id.*) Plaintiff then alleges that FiOptix breached the implied contracts "by reassigning them to a third party or parties." (*Id.* ¶ 29)

"A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal.App.5th 1214, 1230 (2023) (quoting another case); *see also* Cal. Civ. Code § 1621 ("An implied contract is one, the existence and terms of which are manifested by conduct.").

FiOptix moves to dismiss the breach of implied-in-fact contract claim on the grounds that (1) it is inconsistent with plaintiff's express contract claim and (2) plaintiff fails to allege mutual assent to any implied contracts. In opposition, plaintiff responds to the first argument by contending that inconsistent claims may be pleaded in the alternative. However, plaintiff fails to respond to FiOptix's second argument beyond conclusory reference to the existence of implied contracts under California law.

In light of the Court's finding above that plaintiff has failed to plead a claim for breach of express contract, the Court declines to address defendant's first argument, as it is now moot.

As to FiOptix's second argument, the Court agrees that plaintiff has failed to state a claim for breach of implied-in-fact contract because he has failed to factually allege conduct by FiOptix indicating a promise not to reassign work orders prior to their approval. As set forth above, the FAC alleges that under the parties' priors conduct, FiOptix's obligations began upon its approval of work order estimates, not upon mere generation or assignment of the work orders in the first instance. (*See* FAC ¶ 12 ("Approximately 10% of all estimates were not approved because of permitting, access, weather, HOA or other reasons."); *id.* ¶¶ 14–15 (FiOptix issues payments twenty-one days after documentation of performance is submitted, which occurs only after "the Work Order is approved").) The FAC also alleges that the parties did not reach mutual agreement on compensation for the work orders until they were approved. (*See id.* ¶¶ 11–12 (alleging that work was approved or denied depending on the cost estimates).) Accordingly, plaintiff has failed to allege that the parties reached mutual assent on definite terms necessary to establish an implied-in-fact contract. *See Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.*, 12 Cal.App.5th

200, 216 (2017) (no implied contract where no facts were alleged indicating that the parties agreed to the specific rate that defendant would pay). Although plaintiff alleges that "[n]o previous Work Orders had ever been reassigned once they had been assigned to Plaintiff" (FAC ¶ 27), this on its own is insufficient to establish that FiOptix agreed not to reassign the unapproved work orders because plaintiff alleges that "each Work Order, when generated, constitute[d] a *separate* contract between Plaintiff and Defendant FiOptix." (FAC ¶ 13 (emphasis supplied).)

For these reasons, the motion as to plaintiff's breach of implied-in-fact contract claim is **GRANTED**. However, because plaintiff's initial complaint did not allege this claim and in light of the Ninth Circuit's liberal policy to allow amendment, plaintiff may amend this claim consistent with the ruling above. In order to reassert a valid claim for breach of implied-in-fact contract, plaintiff must plead specific conduct by the parties showing their mutual assent—i.e., an "objective manifestations of agreement or objective expressions of intent [that] would lead a reasonable person to believe"—that FiOptix would exclusively assign the disputed work orders to plaintiff and would not reassign them to his subcontractor or another third party. *See Aton Ctr., Inc.*, 93 Cal.App.5th at 1231 (quoting another case).

### 3. Promissory Estoppel

In his promissory estoppel claim, plaintiff alleges that "[b]ased on the long-standing relationship and custom and practice of the parties, when a Work Order was assigned to Plaintiff though the Vision system, it constituted a clear and unambiguous promise to Plaintiff that he would perform the work and be compensated for it." (FAC ¶ 33.) Plaintiff further alleges that he "did rely on the promises created by the Work Orders and undertook the appropriate steps to begin the work," which "proved detrimental" because the orders were reassigned and he did not receive compensation. (*Id.* ¶¶ 34–35.)

"The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'" *Advanced Choices, Inc. v. State Dept. of Health Services*, 182 Cal.App.4th 1661, 1672 (2010) (quoting another case).

FiOptix argues that plaintiff has failed to state a claim for promissory estoppel on the grounds that (1) the claim does not apply where plaintiff has alleged breach of express contract and (2) plaintiff has not alleged any promise by FiOptix that it would not reassign the disputed work orders. Plaintiff does not substantively respond to these arguments and instead cites case law for the proposition that "promissory estoppel has been applied in the context of contracting and subcontracting." (Oppo. to FiOptix MTD at 6.) Even so, none of the cases cited stand for the proposition that a clear and unambiguous promise is not required.

Here, the FAC fails to plead this essential element beyond conclusory terms. Plaintiff alleges that the parties' prior conduct constituted "a clear and unambiguous promise" of exclusive performance rights for work orders (FAC ¶ 33), but insufficient facts are alleged to support the inference that FiOptix promised not to assign the disputed work orders prior to their approval. An "implied promise" can "support a claim for promissory estoppel" under California law, but the promise is still "subject to the same definiteness requirement as [a] breach of contract claim." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792, 793 n.9 (9th Cir. 2012). Accordingly, "unsaid words cannot form a clear and unambiguous promise." *Lange v. TIG Ins. Co.*, 68 Cal.App.4th 1179, 1185 (1998). Moreover, because "lost profits" are not "available under a theory of promissory estoppel" (*Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal.4th 305, 308 (2000)), plaintiff cannot recover for the "lost revenue, lost profits, [and] lost future revenue and profits" under this claim, as he requests. (*See* FAC ¶ 36.)

Accordingly, the motion is **GRANTED** as to plaintiff's promissory estoppel claim. As with his implied contract claim, because plaintiff did not claim promissory estoppel in his initial complaint, plaintiff is granted leave to amend this claim consistent with the Court's ruling above. In order to assert a valid promissory estoppel claim, plaintiff must allege facts sufficient to support the inference the FiOptix made a clear and unambiguous promise not to reassign the disputed work orders to plaintiff's subcontractor or another party. Additionally, the remedy requested must be limited to "bid preparation costs" and cannot include "lost profits." *See Kajima/Ray Wilson*, 23 Cal.4th at 308.

United States District Court
Northern District of California

**4. Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing alleges that all "conditions required for Defendant's performance have occurred" but that "FiOptix breached the open Work Orders when it reassigned them to a third party or parties" and "did not act fairly or in good faith." (FAC ¶¶ 39–41.)

The elements of this claim are: "(1) the existence of a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required; (3) the conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Oculus Innovative Scis., Inc. v. Nofil Corp.*, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007) (quoting another case).

FiOptix moves to dismiss plaintiff's breach of the implied covenant of good faith and fair dealing claim on the grounds that (1) it is duplicative because it arises from the same facts and seeks the same relief as plaintiff's contract claims and (2) plaintiff failed to plead the existence of a contract necessary to support the claim. In opposition, plaintiff does not address the first argument and generally relies on his contention that he "has adequately pleaded claims for relief for both breach of express and implied-in-fact contracts" to support his claim for breach of the implied covenant of good faith and fair dealing. (Oppo. to FiOptix MTD at 7.)

For the reasons stated above, plaintiff has failed to adequately plead the existence of either an express or implied contract. Because this is an essential element of plaintiff's breach of implied covenant of good faith and fair dealing claim, the motion is **GRANTED** as to this claim as well.

Nonetheless, since the Court has granted leave to amend the implied contract claim, leave to amend is likewise granted as to plaintiff's implied covenant of good faith and fair dealing claim. If plaintiff elects to amend this claim, he is on notice that the claim appears to be duplicative, and it cannot be. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1392 (1990) ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.").

United States District Court
Northern District of California

Accordingly, plaintiff must allege facts establishing how "the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract" beyond mere conclusory terms. *See Oculus Innovative Scis., Inc.*, 2007 WL 2600746, at *4.

**B. EDGAR S. MONGE, SR.'S MOTION**

The FAC alleges the following claims against Monge: (1) inducing breach of contract, (2) intentional interference with contractual relations, (3) intentional interference with prospective economic relations, and (4) negligent inference with prospective economic relations. Monge moves to dismiss each.[2]

*First*, in light of the Court's finding above the plaintiff has failed to allege a valid contract or contracts with FiOptix, plaintiff's claims for inducing breach of contract and for intentional interference with contractual relations must be dismissed. The existence of a contract is an essential element of both claims under California law. *See Contemp. Invs., Inc. v. Safeco Title Ins. Co.*, 145 Cal.App.3d 999, 1002 (1983) (stating the elements of inducing breach of contract); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990) (stating the elements of intentional interference with contractual relations). Accordingly, Monge's motion is **GRANTED** as to these claims. Because plaintiff may amend his implied-in-fact contract claim, he is also granted leave to amend his claims for inducing breach of contract and international interference with contractual relations, provided that he can allege sufficient facts to satisfy each of the elements.[3]

---

[2] Monge did not move to dismiss the initial complaint in this Court, and his instant motion was filed *thirty days* after the FAC was filed—well beyond the fourteen days allotted by the Court and the Federal Rules of Civil Procedure. *See* Dkt. No. 10 (citing Fed. R. Civ. P. 15(a)(3)). Plaintiff did not object on timeliness or waiver grounds, and Monge did not file a reply. Regardless of the procedural deficiencies, the briefing on both sides is conclusory and devoid of substantive analysis. For efficiency, the Court has reviewed Monge's motion and briefly addresses its merits herein.

Should the claims proceed, however, the parties are admonished to file all future submissions in strict compliance with the Court's orders and applicable rules, and to present fully developed arguments supported by citation to controlling authorities and the case record. Further, each must exercise extreme caution if artificial intelligence is used to draft any pleading, because it is often wrong and unintelligible. Any failure to abide by these orders will result in sanctions commensurate with the violation, which may include default.

[3] "The elements of a cause of action for inducing breach of contract 'are: (1) that a valid contract existed between the plaintiff and another party; (2) that the defendant had knowledge of

*Second*, as to plaintiff's intentional and negligent interference with prospective economic relations claims, the Court finds that plaintiff has failed to allege with specificity any requisite "independently wrongful act" by Monge necessary to support the claims. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1158 (2003) ("To establish a claim for interference with prospective economic advantage, therefore, a plaintiff must plead that the defendant engaged in an independently wrongful act."); *Lange*, 68 Cal.App.4th at 1185 ("For negligent interference, a defendant's conduct is blameworthy only if it was independently wrongful apart from the interference itself."). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co.*, 29 Cal.4th at 1159.

Here, plaintiff alleges no such violation by Monge that resulted in the disputed work orders being reassigned. (*See* FAC ¶¶ 51–60.) Plaintiff's contention in opposition that wrongful conduct may be "reasonably inferred from the fact that Monge, an unlicensed contractor, had historically performed most of the work on Plaintiff's behalf and under Plaintiff's license, with Plaintiff remaining the responsible contractor," does not suffice. (Dkt. No. 15 at 10.) Nor does plaintiff's kitchen sink argument that Monge "could well have also engaged in unfair competition, misappropriation of trade secrets, defamation, misrepresentation and myriad other unethical or sharp business practices." (*Id.*) To satisfy the pleading standard, the complaint must allege with specificity what independently wrongful act or acts Monge engaged in. Accordingly, Monge's

---

the contract and intended to induce a breach thereof; (3) that the contract was breached, (4) as a proximate result of the defendant's wrongful or unjustified [unprivileged] conduct, (5) resulting in damage to the plaintiff.'" *Contemp. Invs., Inc.*, 145 Cal.App.3d at 1002 (quoting another case).

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co.*, 50 Cal.3d at 1126.

motion is **GRANTED** as to these claims, which plaintiff may amend consistent with the ruling above and provided that he can factually allege the other elements of the claims.[4]

## IV. CONCLUSION

For the reasons stated above, the Court rules as follows:

- FiOptix's motion to dismiss is **GRANTED**. Plaintiff may amend his claims for breach of implied-in-fact contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing only. All other claims against FiOptix are dismissed with prejudice.
- Monge's motion to dismiss is **GRANTED** with leave to amend.

In light of the withdrawal of plaintiff's counsel, the Court advises plaintiff that the District Court has produced a guide for self-represented/*pro se* litigants called *Representing Yourself in Federal Court: A Handbook for Pro Se Litigants*, which provides instructions on how to proceed at every stage of a case, including discovery, motions, and trial. It is available electronically online at https://cand.uscourts.gov/representing-yourself/pro-se-handbook or in a paper copy, free of charge, from the Clerk's Office.

The Court also advises plaintiff that assistance is available through the Legal Help Center. Parties can make an appointment to speak with an attorney who can provide basic legal information and assistance. The Help Center does not see people on a "drop-in" basis, and it will not be able to

---

[4] The elements of intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co.*, 29 Cal.4th at 1153 (quoting another case).

The elements of negligent interference with prospective economic advantage are (1) the existence of an economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with reasonable care; (5) actual disruption of the relationship; and (6) economic harm proximately caused by the defendant's negligence. *Redfearn v. Trader Joe's Co.*, 20 Cal.App.5th 989, 1005 (2018).

United States District Court
Northern District of California

represent parties in their cases. There is no charge for this service. To make an appointment with the Legal Help Center, you may: (1) sign up in person on the appointment book outside the Legal Help Center offices at the San Francisco Courthouse (15th Floor, Room 2796) or Oakland Courthouse (Room 470S); (2) call 415-782-8982; or (3) email federalprobonoproject@sfbar.org. The Help Center's website is available at https://cand.uscourts.gov/representing-yourself.

This terminates Docket Nos. 11, 13.

**IT IS SO ORDERED.**

Date: September 29, 2026

**YVONNE GONZALEZ ROGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**